The first case on the call this morning is Agenda No. 11, Docket No. 121200, Cochran v. Securitas. Appellant, are you ready? Ms. Anthony, you may proceed. May it please the floor, counsel. Hugh Griffin on behalf of Securitas Security Services USA, Inc., the defendant appellant in this case. The issue before you today is whether to change 100-plus years of Illinois common law, holding that in order to recover solely for emotional distress and in an action alleging the interference with the right to possess a corpse, a plaintiff must prove willful and wanton conduct as the cause of that interference. That's been our law for, as I say, more than 100 years. In this case, the trial court dismissed the plaintiff's third amended complaint against Securitas because at best, facts alleged in that complaint show that the mistaken release of Mr. Cochran's body to Butler Funeral Home in this case was the result of negligence or human error at best, not willful and wanton conduct. The facts were set forth in the complaint, but essentially what happened is that there was a mistake in the logbook at the Memorial Hospital Ward as to who was in the Ziegler case. The Ziegler case is a sealed metal container used for bodies that have partially decomposed, and unfortunately there were two bodies like that at the morgue and the logbook reflected that Mr. William Carroll was in the Ziegler case and Butler Funeral Home came to pick up Mr. Carroll, and due to the erroneous logbook entry, Mr. Cochran was taken by Butler Funeral Home and subsequently cremated. So the case was dismissed under 2615-2619 as not stating a cause of action under Illinois law. The appellate court did not disagree with the trial court that the third amended complaint did not allege facts constituting willful and wanton conduct, but they nevertheless reversed because they concluded it was time for Illinois to change the law. On that point, Mr. Griffin, is this a pure policy call for this court? Well, I'm going to give you three considerations that I mean you could – I would probably say no because I'm going to give you three considerations for this issue, and one would be the existing law that we have. Is it consistent to make an evidence standard? Is that consistent with what we have? And then I think we'd get more into it. But in the sense that it's a common law rule, right? It is a common law rule. And consequently, the court has the authority to define the rule as it deems fit, doesn't it? Certainly, I couldn't tell you that you couldn't. I'm just going to give you three analyses, if you will, or three viewpoints, that I believe should cause you to consider that you shouldn't. Okay. And the first one is, is it consistent? Is it logical to do so given the development of emotional distress recovery law that we have here in Illinois? And I would suggest to you the answer is no, and I'll expand on that in a moment. And then the second thing is getting more probably into the policy point. Would such a change in the law have negative implications or bring practical problems and difficulties that we'd be well to avoid? And thirdly, for this case, is it necessary? And we suggest the answer to that is no, given that – and again, I'm talking more about this – the legislature, as an act of the statute, that actually covers our own excremations and gives a cause of action against the crematorium without any need for Wilfred Warren conduct, and that led to actually substantial recovery in this case. So first of all, is it consistent with existing emotional distress development law as we have it now? Now, the appellate court thought it was, but unfortunately they were wrong on what the law is because they decided the case before the Schweiss decision, and they believed that the law had already changed in Illinois so that in a direct negligent infliction action, a direct victim could recover without contemporaneous physical injury or physical impact. They thought that was the law already. So they believed that lowering the standard in this case, the negligence wasn't going to really be that much of a change in the law. But now, as we know from Schweiss, that's not the law. And so I cited the Florida Supreme Court case as kind of my main case. I thought it was the best case that laid out all the reasons not to do this. And many states have gone in there. So we'll get to that, and it creates its own problems. But Florida didn't, and one of the reasons they didn't is they thought it was inconsistent or at least illogical to say, well, the standard – and they have kind of the same rule, you need to prove a physical impact or a physical injury. Now, they're a little different. When they say physical injury, they mean injury from emotional distress. We don't require that. But the context is the same, or the analogy is the same. They just didn't – they did not think it was logical to say, well, we have a lower standard of proof if your negligence was addressed to the handling of a corpse than if it was directly addressed to a live person. And we have the same situation here. We went to a negligence standard. Secondly, we get to the issue of does it create problems? Is there practical difficulties in going to a negligence standard that we ought to consider in our policy decision? And really, that's a two-pronged analysis, I would submit. Any emotional distress case, there's a vagary of how to value the claim, how much, is it all – is it real? There's a lot of issues, obviously. And the law over the years has been reluctant and slow on this claim, and that's the reason. But in this particular context – and again, this is the Florida Supreme Court talking instead of me, but it creates – it multiplies that difficulty because you're going to have a case where every plaintiff is going to have severe emotional distress as a result of the loss of their loved one, but that's not recoverable. So what the jury would have to do is say, well, we've got to figure out how much of the emotional distress was for the interference conduct and how much was for the loss. And that's – I call that our clean task. Maybe that's too much, but it's a difficult task for any jury to do. And the Florida Supreme Court found that to be a factor in their policy decision not to lower the standard. The second practical issue – and this kind of is demonstrated by the states that have adopted an amputated standard, and that is it really does open the door to almost an infinite array of claimed wrongs and slights arising from the handling of corpse. And I don't mean to make light of these. Is that the majority of jurisdictions now? Well, that's interesting. My plaintiff's brief says there's 22 states that have gone that way, so that's – I didn't – it's probably 50-50 close to that. But again, going back to the Shweze case, I would guess that most of those states have abandoned the physical impact and the physical injury rule because I think I read 30 states have abandoned that. And so there you didn't find that the majority rule was persuasive. And I would hope if it is the majority rule, you wouldn't find it persuasive here. But it does unquestionably give rise – open the door to just a multiplicity of actions. I just jotted some of these down, but it's just a limited list. But there's cases about dissatisfaction with embalming results, unhappiness over grave site preparation, grave site maintenance, casket defects, refrigeration malfunction at the funeral home, delays in transmitting notices of death or funeral arrangements, mislabeling of urns, extent of autopsy incisions, burial plot mistakes, even accidents with a hearse have been found to be within the scope of a negligence claim, damage to a body, trying to extricate it from the wreckage. So, again, I know that defendants throw that up a lot, but you found it persuasive in other somewhat similar contexts. The non-contact support cases, you found that was a persuasive issue. The social host liability cases, you found that was a significant consideration. Now, here we do – we are dealing with – Presumably, though, Mr. Griffin, the states that have adopted the negligence standard, right, have probably weighed the cases you're just talking about versus the serious cases like the one we have before us, right? Right, and that's – so that gets me to my necessity argument. This is a serious case, and the legislature reacted to that by enacting the Crematory Regulation Act. They did so, interestingly. I filed an additional authority last week. It's just to show it was a case where there was a cremation and there was no proper signature on the authorization form. Judge McCluskey said, well, the law is what it is. I can't give you a cause of action. But the legislature, a year later – six months later – I don't know if they knew of that decision, but maybe they knew of the trial court decision, but they've enacted a statute that now makes – gives a cause of action against the crematory or crematorium for cremating a body without proper authorization to do so. And that's – obviously, you're not checking the identity of who they're cremating. There's an obligation to check that identity and an obligation to have proper authority to cremate the body that you have. And here, there was neither. And so the plaintiff, properly so, had a cause of action against proper funeral home under that statute. And the case settled, but it was certainly a sound cause of action. So the legislature limited their liability to the cremating authority, which we believe makes sense. In this case, there's not even an allegation that Securitas obviously was involved in the cremation or even – they were releasing – the body was released for a funeral home, so there couldn't have been an allegation they knew it was going to be cremated. But, I mean, if the legislature wanted a broader scope of recovery, they could enact that or they could have enacted it. But for the serious case you're talking about, and we do have a serious case here, the remedy is there, it was there, and we've been taking advantage of it. So we would urge that this is certainly not a case to open up the array, if you will, of other kinds of cases. I mean, the plaintiff isn't asking you to create a cause of action for negligent cremation. They're asking you to create a cause of action for negligent infliction of emotional distress. I mean, negligent interference with the right to possess a body, and they admit it would apply to all cases. It would just apply to this case. So I think from a policy point of view, I guess I would submit policy really isn't – where there is a remedy already provided by the legislature. So for those three, and those three components, we believe each one would take you to the decision to leave the law where it is and leave the plaintiff to the remedy that the legislature created. If there's no questions, I'll reserve my time for rebuttal. Thank you. Thank you, Mr. Rickett. Ms. Burgess. May it please the Court. Good morning. My name is Amelia Burgess, and I represent the plaintiff, Donna Cochran. It is without dispute that negligence is the default standard in the state of Illinois. If we were considering a new cause of action for the very first time today, the presumption would be that a negligence standard applies. But defendant argues here to the contrary and argues that the negligence standard that applies to individuals in all walks of life, in all circumstances – for an example, when we drive a vehicle down the road, we are subject to a negligence standard. When professionals perform their work, architects, lawyers, engineers, they are subject to a negligence standard. When a surgeon is performing surgery, they are subject to a negligence standard. But defendant here today argues for a contrary result and argues that individuals who handle human remains should not be subject to a negligence standard and should instead be granted partial immunity under a willful and wanton standard. Defendant asks, is this logical? And the plaintiff would assert that it is not. That in this particular instance, the public policy considerations fall strongly in favor of a negligence standard here, which is consistent with the vast majority of jurisdictions that have looked at this particular question. Is your analysis – is it altered at all by the fact that this is making a claim for emotional distress damages? It is not, Your Honor, and this is why. So this Court has been very careful and considerate in looking at emotional distress damages, especially in the context of negligent infliction of emotional distress. How does the Court ensure that those claims are consistent with what the average individual would think is a compensable harm? What defendant misses in this particular case is the fact that we are not just asking for emotional distress based on a dissatisfaction or a disgruntlement or hurt feelings or something amorphous like that. What we are looking at is an actual physical damage, an actual interference with the right of the plaintiff, which is a long-recognized theory here that all next of kin have an intrinsic and moral right to determine the time, manner, and place of burial of their loved ones and that to interfere with that is something that is compensable. So the cause of action is for negligent – is it for interference with the right of the next of kin for the disposition of the body or is it a negligent infliction of emotional distress case? Plaintiff is not alleging a negligent infliction of emotional distress. Plaintiff is alleging a separate, recognized, freestanding tort for wrongful interference with the next of kin's right to possession. This is completely discrete and distinguishable from the tort for negligent infliction of emotional distress. In this particular instance, we can see that because there is an actual harm. Unlike negligent infliction of emotional distress where we have to add additional elements such as a zone of danger or a direct impact, in this particular case, the defendant's actions resulted in the inadvertent destruction and cremation of the plaintiff's son. This was contrary to her desire. This was contrary to what she wanted to happen and this deprived her of the ability to have an autopsy performed so that she could find out why her son died unexpectedly at the age of 39. This is a real and palpable harm that the plaintiff suffered. Nevertheless, the defendant now argues that despite the fact that his actions caused harm to the plaintiff and despite the fact that this is the type of harm that the courts have long recognized as compensable, that they should not be held accountable for their actions, that the plaintiff should not be allowed to present her case to a jury and to ask the jury to award her what is fair and reasonable and compensates her for her loss. Counsel argues that in terms of looking at the jury, trying to assess damages here, that it would be very difficult for the jury to carve out normal human grief for the loss of a loved one and the emotional distress that perhaps was caused by defending the case. Is that a valid consideration? And if so, how would a jury, how would we instruct a jury? How does a jury do that? It's an understandable concern, but we ask juries on a daily basis to make difficult decisions. And when it comes to damages, this is no different than that. In a personal injury case, for example, we ask a jury to differentiate between an award for pain and suffering, emotional distress, and loss of a normal life. We can conceptually see how those might be difficult for a jury to separate out. Nonetheless, because we also understand that those are real, palpable harms that are suffered, that they are compensable under the law. And the same is here. A jury is well able to differentiate here and to understand that some of the distress the family members will experience will be the death of their loved one. But they also are fully capable of realizing that actions that interfere with expectations, that prevent them from the ability to see their loved ones cared for in their internment and in their death, is something that goes beyond that, that creates additional harm and additional damages to that particular individual. And as a result, we trust juries to do that in many, many different instances. There is no less reason to do so here. Further, while it is understandable a defendant has that concern, the notion that because of the type of damages here, they are entitled to a Wilflin-Wanton standard is an idea without counterpart under Illinois law. The only other type of damages that has any reflection on the burden of proof or the standard of care is with punitive damages. And those clearly are a very different situation where there are countervailing public policy interests and are well defined outside of that. Otherwise, the Wilflin-Wanton standard, it is very rarely used in the state of Illinois, and only a few very specific scenarios. And it's worth noting, is not used in a negligent infliction of emotional distress case. That's a negligent standard. So while there are some similarities, because in this type of tort, the only form of damages might very well be emotional distress, those similarities do not result in a point-on-point comparison. And as the plaintiff noted in the brief, this case is more like or more similar to some of the property cases where there is a recognition that sometimes when there is an interference with property or a destruction of property, sometimes there is no extrinsic value. That does not mean it's not compensable. The jury is simply tasked with finding the value of loss to the person who experienced that. And, of course, this is things like family photos, heirlooms, those items which we all understand have value and that the law has good reason to say you should not interfere with that and your negligence should not cause the destruction of those items. And as a result, we will allow you to recover from that when that occurs. Ms. Burgess, could you respond to Mr. Griffin's argument regarding the statutory remedy? Yes, Your Honor. The Crematory Regulation Act is an interesting argument because we all agree that it has no functional application to the defendant in this case. That statute does not apply to Securitas. Securitas did not cremate the remains of Walter Cochran. As a result, plaintiff will never have a cause of action pursuant to that statute against Securitas. Nonetheless, Securitas now argues that that is the only cause of action the plaintiff may pursue. That would reach, if the court were to accept that argument, that would result in vastly inequitable results. If you're talking about public policy here, the argument has been made that the public policy has been settled in this state for a very long time and that you're asking for a change. Here we have the legislature legislating in this general area but leaving intact 100 years or whatever of jurisprudence of this court. What should we take from that? Would the legislature did, in fact, enter into this area but did not change in any way the subtle law of this court? I think it's somewhat difficult in the absence of legislative intent that's expressly presented to imagine what was going on in their minds. At the very least, we know that the legislature was highly concerned that people who handle human remains do so under a high degree of standard of care. As a result, set forth a statute with very specific requirements that crematoriums must follow. If they don't follow them, then they are subject to liability. The fact that the legislature did not reach any further to address individuals who handle human remains outside of the crematory process is one that is difficult to draw any firm conclusions from. What we can say for certain is it did not change the law. But with regard to the question of Wilflin-Waughton versus negligence, defendant is posing this as an expansion of liability when that is not really the case here. A plaintiff is not asking this court to recognize a new cause of action or to expose a new classification of defendants to liability that they were not previously exposed to. The plaintiff is simply saying is the law for the past 100 years has been unintentional. It has not been well considered. It has not been a thought-out process. Because if we go to the very first case where this type of tort was considered in Minsinger v. O'Hara in 1914, the court did not say we would never consider a negligence action here. What they said was the plaintiff has brought a cause of action premised on intentional or reckless conduct or willful conduct, and they have pled sufficient facts to move forward on that. That case has now been cited by a number of Illinois appellate courts for the proposition that a plaintiff may only pursue a claim pursuant to willful and wanton misconduct. And certainly the moment they did so, that became the law, but it was without careful reflection and an analysis of whether or not that is appropriate under Illinois law. And we certainly know, when looking at the other jurisdictions that have considered this and the authoritative treatises in the second restatement, that the vast majority have moved away from a willful and wanton standard, recognizing the importance of this area of the law and the necessity to move back to the more standard, more well-recognized and universal negligence standard. And I would like to clarify, this defendant, when an inquiry was made about the number of states that have addressed this particular question, he presented it as it was more or less 50-50. I would disagree with that conclusion. We know from the briefs that 22 states that have considered this have adopted a negligence standard. We know defendants cited to six cases, five of which did not answer it one way or the other, simply stated what the law was and continued to follow a willful and wanton, and one of which, the state of Florida, which chose to maintain its current state of the law by not adopting the second restatement. But what they did not do was strictly adhere to a willful and wanton standard. The Florida court said, we are a state that requires contemporaneous physical injury or contemporaneous manifestation of physical injury in order to recover from emotional distress. The second restatement abandons that. So Florida said we can't adopt that because that is inconsistent with our law. But under Florida law, for this type of tort, a plaintiff may either recover under willful and wanton or by proof of contemporaneous physical manifestation of that emotional distress. In the concurring opinion from one of the justices in the Florida Supreme Court, talked about how that was not, under Florida law, a terribly difficult burden to meet and stated the belief that this would not be too much of a limitation on plaintiffs because of the type of emotional distress this particular tort is likely to cause. I also would like to address the procedural posture of this case because it is important in terms of the potential outcomes that this court may consider. The defendant spoke about the trial court's granting of the motion to dismiss as if the trial court had ruled on this question of willful and wanton and whether or not the allegations contained in the complaint rose to the level of willful and wanton misconduct. That is not a complete statement of what occurred in the trial court. The trial court did listen to those arguments, but the ultimate ruling was that the defendant did not owe a duty to the plaintiff. This is a very important distinction because by finding there was no duty, the trial court could dismiss this with prejudice, which it did, because duty is a question of law. However, as plaintiff has argued, under Illinois law there is a generalized duty not to interfere with the next of kin's right to possession, and under the duty analysis, the defendant did have a duty towards the plaintiff and it was inappropriate for the trial court to dismiss on those grounds. Throughout this case, beginning at the trial court and going into the fourth district, and now at this level, plaintiff has also argued and defendant has argued whether or not the allegations contained in the complaint rise to the level of willful and wanton misconduct. Plaintiff here has argued that she has met her burden of pleading in this regard and that the conduct of securitas, by completely disregarding written security policies that are in place to prevent this type of error, rise to the level of willful and wanton misconduct. And that furthermore, this question of whether or not the defendant breached his duty is generally one that is a question of fact. And as a result, it was inappropriate for the trial, or would be inappropriate for the trial court to grant a motion under 615 on those grounds. Similarly, the fourth district appellate court did not specifically address the question of whether or not the conduct contained in the complaint was willful and wanton. There was a short discussion of that, but there was no explicit ruling one way or the other. Because the fourth district focused on this bigger picture question which we are now focused on, which is whether or not the willful and wanton standard truly reflects Illinois law. And the fourth district unanimously said, no, it does not. That it is not consistent with the evolution of our law, and that we are not going to continue to cite prior precedent just broadly without some analysis and a question of what are the countervailing public policy interests here? Why have other states moved away from a willful and wanton standard? And in this particular instance, the other states have made clear that they believe the public policy implications fall squarely toward the injured plaintiffs, and that there is a necessity to make sure the industry and individuals who handle human remains do so with great care because of the importance of the work that they do and the intrinsic right of the family members and the next of kin to ensure that their loved ones are properly cared for. Are you saying that regardless of how we rule on the negligence versus willful is that what you're saying? Yes, Your Honor. Plaintiff is arguing the alternative. Either that the willful and wanton standard is no longer consistent with Illinois law and should be abandoned, or that even if the willful and wanton standard is maintained, plaintiff's complaint is sufficient to plead a cause of action for willful and wanton misconduct. Defendant asked this court to consider three questions. Is it logical? Are there negative implications? And is it necessary? And plaintiff has simply asserted that all three of those questions should be answered in favor of the plaintiff. Is it logical? Is it logical to continue to follow 100 years of precedent when there was no intent behind the current state of the law? And it is not. And it certainly is incumbent and permissible for this court to say it is time to reexamine this because, as both parties have noted, this is the first time this particular tort has ever been considered at this level, that it has ever had the chance to go before this court and to be reviewed to determine whether it accurately reflects the state of Illinois law. The second is, are there negative implications? And there are. Implicit within defendant's brief is this notion that people are being harmed, that Donna Cochran was harmed, but that she would be denied recovery. And that is a negative implication. That's a very powerful statement for the defendant to acknowledge, that Donna Cochran was harmed, but regardless, she should be prevented by the law from going before a jury and saying, I was harmed. Do me right. And that her complaint could be dismissed at this early stage in the litigation. And the final one, is it necessary? Is it necessary to move toward a negligence standard? And it is. In order for there to be consistency and predictability in the law, it is necessary to follow the negligence standard absent some quality or some criteria or some factor that requires movement away from the Wilflin-Watten standard, and that simply is not present under defendant's argument. The defendant has not presented a reason why the negligence standard would be inappropriate. The majority of defendant's argument is premised on the floodgates of litigation, but as is noted in Plaintiff's brief, that has not come to pass in jurisdictions that have adopted the negligence standard many, many years ago. Regardless of Wilflin-Watten or negligence, this remains a relatively rare cause of action. Thankfully, it is. But when it does occur, it is Plaintiff's position that the harmed individuals should not have to bear the burden of that harm, that it should be appropriately allocated on the at-fault party. And as a result, Plaintiff would respectfully request that this Court adopt the negligence standard to be consistent with Illinois law, the law from other jurisdictions, as well as the authoritative treatises on this matter, and to remand this matter back to the trial court for further proceedings. Thank you. Thank you. Mr. Gordon. I'm a little perplexed by the claim that the Third Amendment complaint stated a cause of action in Wilflin-Watten conduct. There's not even in this Third Amendment complaint any conclusory allegation that Securitas acted willfully and wantonly or intentionally over the conscious disregard of plaintiff's rights or under indifference to the plaintiff's rights. It's no oversight, because if you look at the Second Amendment complaint, and that's located at RC 275, that's a separate Wilflin-Watten account, with all those buzzwords, if you will, included within it. Now, I know the law is the buzzwords don't do it. You still have to plead facts to show that kind of conduct, and that wasn't done here either, but I've never seen a case where it was held that a complaint stated a Wilflin-Watten claim when it wasn't even purporting to do so. But again, the facts themselves, I mentioned them already. I mean, they don't meet any standard of Wilflin-Watten conduct that you want to use. Just this last term, you decided Barr v. Cunningham and said Wilflin-Watten, there must be a conscious choice of a course of action with actual knowledge that it will cause harm to others or actual knowledge of facts that will put a reasonable person on notice that it will cause harm. Again, that's not pledging. I explained already what happened, and that's with pled. There was a mistake in the blog book as to who was in the Ziegler case, and that led to this outcome. So the idea that this is a case that pleads Wilflin-Watten conduct, I don't think that's in the case. The public court didn't agree with that, and she said, well, the trial court didn't rule that, but that's the context of the order the court drew. The court said there's no duty in the context of The only duty under the law is to refrain from Wilflin-Watten conduct. How do you respond to the plaintiff's argument that failure to follow their own standards, guidelines, and procedures is in itself Wilflin-Watten? I think that was the argument. We cited the Rhodes case in our brief where you've held that internal policies and procedures in themselves don't even establish a standard of care for languages. But on the facts, underlying facts here, the mistake was who was in the case. That was the mistake. If the person they thought was in the case had been in the case, there wouldn't be any violation of any policies or procedures. I mean, everything was done according to the paperwork except it was the wrong person because the law book here generated that mistake. But the idea that Securitas knew or intended to violate any policies or was aware of facts giving rise to a total disregard of the policies, there's nothing pled like that. Again, the underlying facts are pled, and the reason there was, if you will, a violation was because of that fundamentally errant mistake, but not any Wilflin-Watten conduct or knowing or intentional violation of any policies. Counsel started the argument with this premise, and it's not a correct premise in Illinois law, that if you complete a negligent cause of action of any kind, then you can have emotional distress without any physical injury or physical impact. I mean, she said legal malpractice, accounts malpractice. No, that's not the law. The law is you can't get emotional distress in a legal malpractice case. You can't get, I don't know of any case that allowed emotional distress in an architectural or accounts malpractice case. You had an negligent misrepresentation case in Brogan in the claims for emotional distress, and he said it wasn't going there for various reasons. We're not going to let you get emotional distress for that claim. So just because you can put a different label on what you're pleading, certainly doesn't decide the issue. Justice Tice mentioned the jury issue, and I didn't seek counsel to regret it. I don't think we could give a sound answer to, well, how is a jury going to figure that out? I've got all this emotional distress that's not compensable. I've got to figure out maybe there's a piece that is. I think that's a legitimate concern and should play into your analysis. The legislature is held to know the law. We cited the cases in her brief. When they enact a statute, they're held to know what the law is, and so we have to take the point that they acted knowing that under our law it takes willful and wanton conduct to recover for this kind of a tort. We're going to carve out for the crematorium, and we're going to allow an action to proceed without willful and wanton conduct, where in this case a valid cause of action was stated and ultimately settled. So again, as far as this case goes, there's certainly no compelling need, and I would submit no compelling policy to change our law. She talked about cases, respectfully, involving heirlooms and photos and so forth, but again, those aren't cases that allow emotional recovery. Maybe nominal recovery, but that's all there is. So again, just taking all the panoply of things you can think of and work into your analysis here. I would respectfully submit in this case there's no reason and there's no need for the law to be changed. I respectfully request that you reverse the appellate court and affirm the court. I did have one piece that I forgot, going back to what I started with, and that is the court's ruling. This was the first complaint, and the court in its ruling said, the facts pled do not support the allegation that notice occurred that there are sufficient facts to upgrade any negligence on behalf of the defendant to that of Wolf Lujan County. That ruling never changed. And the final order about lack of duty was, again, within that context, that there's no facts here showing that Securitas breached its duty. It happened. There's a duty, but the duty is to refrain from Wolf Lujan County. So on that basis, I respectfully request again that the appellate court be reversed. Thank you very much. Thank you. Case number 121200, Cochran v. Securitas, will be taken under advice in this agenda number 11. Mr. Griffin, Ms. Fergus, we thank you for your arguments this morning. You are excused.